BEHRINGER, Plaintiff and Respondent, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and others, Defendants and Respondents: RINGLE and another, Defendants and Appellants.

*April 9—May 7, 1957.*

588

For the appellants there were briefs by *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau, and oral argument by *Walter H. Piehler*.

For the respondent Ella Behringer the cause was submitted on the brief of *Smith, Okoneski, Puchner & Tinkham* of Wausau.

For the respondent State Farm Mutual Automobile Insurance Company as insurer of Henry Leffel there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork* of Madison, and oral argument by *Walter M. Bjork*.

For the respondent State Farm Mutual Automobile Insurance Company as insurer of Robert Behringer there was a brief by *Schmitt & Wurster* of Merrill, and oral argument by *C. B. Wurster*.

For the respondents Arden Leffel and Henry Leffel there was a brief by *Krueger & Fulmer* of Wausau, and oral argument by *Burton E. Fulmer*.

CURRIE, J.  It is contended by Universal Underwriters that the affidavits in support of the motion for summary judgment conclusively establish that the SR–21 was filed

by it through mistake which renders the SR–21 ineffective for any purpose of imposing liability upon it. Such mistake consists of its assumption, based upon the information at hand when it filed the SR–21, that the sixteen-year-old Arden Leffel possessed a driver's license at the time of the accident instead of merely an instruction permit.

Under the provisions of sec. 85.08 (7), Stats., Arden was restricted to driving only during daylight hours with but one other passenger in the car, such other passenger being a licensed driver seated beside him. Therefore, Arden was operating the Ringle car illegally at the time of the accident because it was at night and the car was occupied by more than one other passenger. Universal Underwriters maintains that the principle of *Quin v. Hoffmann* (1954), 265 Wis. 636, 62 N. W. (2d) 423, applies and voids any coverage under its policy. This is because the permission by Arden's father to drive was an illegal permission.

The briefs of counsel raise certain issues with respect to the application of *Quin v. Hoffmann, supra.* One of such issues is whether *Quin v. Hoffmann* should not be reconsidered and repudiated because of the amendment made to sec. 204.30 (3), Stats., by the 1955 legislature. A second is whether the instant case cannot be distinguished from *Quin v. Hoffmann* on the ground that here the minor driver actually possessed a license or permit to drive, while in the *Quin Case* he possessed neither. Because of the disposition that we make of the appeal we find it unnecessary to pass on such issues. We will assume for the purpose of deciding this case only that if Universal Underwriters had not filed the SR–21 it would have had a defense under the principle enunciated in *Quin v. Hoffmann.*

In *Laughnan v. Griffiths* (1955), 271 Wis. 247, 73 N. W. (2d) 587, we analyzed the Wisconsin Safety Responsibility Law (sec. 85.09 (5) to (16) (c), Stats.) to ascertain its underlying objective in order to determine the legal effect

of the filing of an SR–21 by an automobile liability insurance company. We therein stated the following conclusion (p. 259):

"We confine our determination at this time to holding that an automobile liability insurance company can make itself liable on a policy issued by it where, after investigating the facts, it, acting through a duly authorized agent or employee, voluntarily files with the commissioner an SR–21 form admitting coverage as to the accident described in such SR–21 intending to be bound thereby, even though without the filing of the SR–21 there might not be liability."

By use of the words "intending to be bound thereby" we did not have reference to any undisclosed subjective intention of the company, but only that the company had filed the SR–21 for the purpose of complying with the Safety Responsibility Law.

We also held in the *Laughnan Case* that sec. 85.09 (11), Stats., clearly recognizes that the SR–21 may constitute an admission against interest as to the coverage of the policy on the part of the insurance company which has filed the same. However, we expressly left undecided the further issue of whether the filing of an SR–21 does not constitute more than an admission against interest. Our later decisions in *Prisuda v. General Casualty Co.* (1956), 272 Wis. 41, 74 N. W. (2d) 777, and *Pulvermacher v. Sharp,* ante, p. 371, 82 N. W. (2d) 163, while referring to a filed SR–21 as an admission against interest, are not to be interpreted as a holding that such an SR–21 might not have greater effect than a mere admission against interest.

Our analysis of the Safety Responsibility Law in the *Laughnan Case* clearly demonstrated that the objective of such act was to protect the persons damaged or injured through the negligence of an operator of a motor vehicle. This was accomplished by providing a penalty against such operator and, if he were not the owner of the vehicle driven

by him, then also against such owner, in the event there was in existence no policy of automobile liability insurance which covered the operation of such vehicle at the time of the accident, and no cash indemnity fund or other security is deposited with the commissioner. Such penalty, for failure to meet either of such two alternative requirements, consisted of suspending both the offending operator's driver's license and the registration of the vehicle operated by him. If a policy of existing insurance is the alternative means selected to comply with the law such fact has to be evidenced by the filing of the SR–21.

Keeping in mind the objective of the law, if a policy of existing automobile liability insurance is to be relied upon as the source of compensating the person who has sustained damage or injury, surely the legislature intended this to be as effective for such purpose as the alternative method of depositing security with the commissioner. However, as borne out by our decision in the *Pulvermacher Case,* the legislature, albeit possibly unintentionally, left one loophole in accomplishing such result. This came about by not providing that such existing policy of insurance meet any higher or more stringent requirements than specified by secs. 204.30 (3) and 204.34 (2), Stats. Under such statutes a policy may contain valid exclusion clauses which will prevent recovery on it. However, for reasons hereinafter pointed out, our decision in the *Pulvermacher Case,* that the filing of the SR–21 should not bar the insurance company from raising the defense of a policy exclusion clause, should be limited to exclusion clauses which prohibit recovery upon the policy by the named insured.

We deem it highly significant that the Safety Responsibility Law affords a sixty-day period following receipt by the motor vehicle department of the accident report before the driver's license and the vehicle's registration may be suspended because of failure to either file a proper SR–21, or to

deposit security in the amount required by the commission. It seems evident that one of the purposes of providing such sixty-day period is so that, if there is an existing policy of automobile liability insurance, the insurer may have adequate opportunity to conduct an investigation to determine whether the facts warrant filing an SR–21. We are therefore constrained to hold that, when a company has through an authorized officer, employee, or agent filed an SR–21 with the commissioner for the purpose of complying with the Safety Responsibility Law, the company cannot thereafter deny liability upon its policy because of any act occurring, or fact existing, as of the time of such filing, which it then knew, or could have known through the exercise of due diligence. In other words, the legal effect of filing an SR–21 under such circumstances is to conclusively certify that under the facts then existing its policy insured both the named owner and the named operator of the particular vehicle described in the SR–21 as to which the same was filed.

In those situations where greater liability is imposed upon the insurance company, which has filed an SR–21, than it originally contracted for when it issued its policy, the same is one imposed by statute as a result of its voluntary act in filing the SR–21. We have an illustration of a similarly imposed statutory liability provided in another phase of the instant appeal. Under the provisions of sec. 85.08 (9) (c), Stats., a parent or guardian, who has signed an application for an instruction permit of a child under eighteen years of age, is made liable for the negligence or wilful conduct of such minor in operating a motor vehicle upon the highways.

To permit Universal Underwriters to introduce evidence at the trial of the within action, that Arden Leffel had no legal permission from either his father or Ringle to operate the insured vehicle, would be to repudiate the certification contained in its SR–21. This it cannot do.

The rationale of the within opinion on the effect of the filing of an SR–21 requires that we reconsider the basis of our decision in the *Pulvermacher Case* as to the reason advanced as to why the insurance company there was not barred from asserting the defense of a policy exclusion clause. We there held that the filing by the company of the SR–21 did not bar its right to assert the exclusion clause as a policy defense because there had not been an intentional relinquishment of a known right. We are now satisfied that an insurance company, which files an SR–21, is barred from asserting an exclusion clause in its policy as a defense, if, in order to do so, it must rely upon the occurrence of facts which it could have discovered by the exercise of due diligence within the sixty-day period allotted by statute for the filing of the SR–21.

However, in the *Pulvermacher Case* the injured person, who is the third-party beneficiary that the Safety Responsibility Law was designed to protect, was the *named insured* under the policy. The Safety Responsibility Law should not be so construed that the filing of an SR–21 would give such named insured the right to recover upon his own policy of insurance when he had already expressly contracted in such policy that there would be no coverage as to his own damages. This is because the SR–21 is filed to protect such named insured, as owner of the insured vehicle, against having his vehicle registration suspended. In this respect it is a filing for and in behalf of the insured and he should not be permitted to use it as a weapon against the Insurance Company.

Universal Underwriters contends that in the instant case it does have a valid defense based upon an exclusion clause in the policy. Such clause provided that the policy does not apply "to liability assumed by the insured under any contract

or agreement except a warranty of goods or products." Because of this, it is argued that any liability of Henry Leffel as an additional insured is based upon his voluntary assumption of liability for Arden's acts by signing Arden's application for an instruction permit.

It would seem that such liability of Henry Leffel for the acts of operation of his son, Arden, is one imposed by statute [1] rather than the result of a contract or agreement. *Lackey v. Olds & Stoller Inter-Exchange* (1927), 80 Cal. App. 687, 252 Pac. 672, and *Marple v. American Automobile Ins. Co.* (1927), 82 Cal. App. 137, 255 Pac. 260. Furthermore, the omnibus coverage clause of Universal Underwriters' policy makes any person an additional insured thereunder who uses the insured vehicle, "provided the actual use of the automobile is by the named insured or with his permission." Henry Leffel had express permission from Ringle to use the car, and such use, therefore, included the right to permit someone else to operate it. *Maurer v. Fesing* (1940), 233 Wis. 565, 571, 290 N. W. 191, and *Schimke v. Mutual Automobile Ins. Co.* (1954) 266 Wis. 517, 521, 64 N. W. (2d) 195.

However, even if there had been a violation of this particular exclusion clause by reason of Henry Leffel signing Arden's application for an instruction permit, this was a fact which Universal Underwriters should have discovered by the exercise of due diligence prior to the filing of the SR–21. This precludes it from raising such issue now.

[1] Sec. 85.08 (9) (c), Stats., provides: Any negligence or wilful misconduct of a person under the age of eighteen years when operating a motor vehicle upon the highways shall be imputed to the person who signed the application of such person for a permit or license, which person shall be jointly and severally liable for such operator for any damages caused by such negligent or wilful misconduct.

While we thus reach the conclusion that the learned trial court properly denied the motion for summary judgment of Universal Underwriters, we cannot affirm such denial with respect to the other movant, Ringle. The complaint alleged agency and joint enterprise between the Leffels and Ringle, but the affidavits in opposition to the motion for summary judgment aver no facts to sustain such allegations. On the other hand, the facts stated in the affidavits in support of the motion completely negative any relationship of agency or joint enterprise. Therefore, the allegations of the complaint on this issue are not to be considered in disposing of the motion for summary judgment. See *Laughnan v. Griffiths, supra,* at page 251. This requires that the order appealed from, in so far as it denied the application for summary judgment dismissing the complaint as to Ringle, must be reversed.

*By the Court.*—That part of the order denying summary judgment as to the appellant Universal Underwriters is affirmed; and that part of the order denying summary judgment as to the appellant Ringle is reversed, and cause remanded with directions to enter judgment dismissing the complaint as to him. The respondents shall be entitled to tax costs.

FAIRCHILD, J. (*concurring*). *Quin v. Hoffmann* (1954), 265 Wis. 636, 62 N. W. (2d) 423, held that permission given to an unlicensed driver is not "permission" as used in the statutory omnibus coverage clause. In my opinion that decision should be overruled. It was apparently considered that sec. 204.30 (3), Stats., was not enacted for the protection of persons injured but only for the benefit of the additional assured. That was too narrow a view. Ch. 349, Laws of 1955, effective July 8, 1955, changed the rule of *Quin v. Hoffmann* but the instant case arose before

that date. On the basis of the foregoing, I agree that the order as to Universal Underwriters should be affirmed. I agree with reversal as to Ringle for the reason stated by the majority.

Because the foregoing is a sufficient basis for the result, I express no opinion as to the theory upon which the majority opinion is based. With reference, however, to the discussion of *Pulvermacher v. Sharp,* ante, p. 371, 82 N. W. (2d) 163, set forth in the majority opinion, the following observation is pertinent. Counsel in the *Pulvermacher Case* did not attack the validity of the policy provision excluding from coverage afforded to an additional, assured his liability to a named assured. Such validity was evidently considered established in *Frye v. Theige* (1948), 253 Wis. 596, 34 N. W. (2d) 793. Although the opinion in the *Frye Case* sought to distinguish *Schenke v. State Farm Mut. Automobile Ins. Co.* (1944), 246 Wis. 301, 16 N. W. (2d) 817, the principle of the *Schenke Case* was in my opinion correct and controlling. The court ought to return to it. The exclusion of liability to a named assured causes an additional assured to enjoy less protection than the policy gives the named assured and violates sec. 204.30 (3), Stats.