DAHLKE, Plaintiff and Respondent, v. ROEDER and another, Defendants and Respondents: MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Defendant and Appellant.

*October 5—October 31, 1961.*

584

For the appellant there were briefs by *Smith, Puchner, Tinkham & Smith,* attorneys, and *John E. Bliss* of counsel, all of Wausau, and oral argument by *Mr. Richard P. Tinkham* and *Mr. Bliss.*

For the respondent Marvin Dahlke there was a brief by *Crooks & Crooks* of Wausau, and oral argument by *Leo D. Crooks.*

For the respondents June Roeder and State Farm Mutual Automobile Insurance Company there was a brief by *Schmitt, Wurster & Tinglum* of Merrill, and oral argument by *Leonard F. Schmitt.*

HALLOWS, J. The appellant raises several issues involving the admission and exclusion of evidence, the instructions, the rebuttal argument, and the proration of damages between the two insurance policies, but the more-important and decisive issue is whether there is evidence to sustain the verdict that June Roeder had permission to use the car at the time of the accident so as to become an additional insured under the omnibus clause of the Mutual Service policy. The policy defines "insured" to include "any other person using such automobile, provided the actual use thereof is with the permission of the named insured." The verdict was approved by the trial court after motions, which included one by the appellant, to change the answer to the permission question from "Yes" to "No." We must, therefore, examine the evidence in the light most favorable to sustain the verdict, *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129, or stated another way, our inquiry is limited to the question of whether there is any credible evidence which, under any reasonable view, supports the verdict. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549; *Vanderbloemen v. Suchosky* (1959), 7 Wis. (2d) 367, 97 N. W. (2d) 183.

Much of the evidence was conflicting, not only between the witnesses but June Roeder herself gave contradictory testimony. But taking the evidence most favorable to the verdict, we do not find sufficient credible evidence from which a jury could reasonably draw the inference of permission within the meaning of that term in the policy and sec. 204.30 (3), Stats.

State Farm argues the finding of permission is sustained because Marvin Dahlke gave June the keys, he said "Youse take the car back," a statement June heard, and Marvin meant any one of the three, June, her husband, or Hubert,

could drive. She had a driver's license and Marvin never said she could not drive. She got behind the wheel and started the motor. She was seated behind the wheel a few minutes before the accident. Marvin Dahlke was then in front of the car and presumably could see her position, yet he made no declaration she could not drive, and June Roeder, in a written statement made a little over a year after the accident, said she intended to back the car up and turn it around.

The difficulty with this evidence is the lack of internal connection and relationship between the several incidents. When the keys were tossed to June, she put them in the ignition and resumed her seat next to the driver's position where she had been sitting when Hubert drove the car to the cheese factory. Significantly, no words were spoken at that time. This is an unrelated incident and would not alone establish an implied consent to drive or use the car. *Main v. Cameron* (1961), 13 Wis. (2d) 15, 108 N. W. (2d) 142. At the most, it was an ambiguous act. True, Marvin knew his cousin had a driver's license and never said she could not drive. There was no occasion for Marvin to make such a statement.

Permission cannot be presumed from the knowledge a relative has a driver's license and the fact she had not been forbidden to drive. Implied consent to use one's car must proceed from and be manifested by some acts, words, or conduct of the permitter. *Brochu v. Taylor* (1936), 223 Wis. 90, 269 N. W. 711. State Farm presumes Marvin, when in front of the car, saw June at the wheel a few minutes before the accident and did not object, but the evidence is that Marvin had his back to the car and did not know the motor was running. On this evidence, no question of his negligence was submitted to the jury. June Roeder's statement that she intended to back the car up

and turn it around is only evidence of her intention to use the car to that extent, but such intended use does not raise an inference of permission to do so.

Great stress is placed upon the statement of Marvin, "Youse take the car back." When this statement was made, Marvin was talking to Hubert Dahlke and Leroy Kage. He did not know where June was. Taking as true she overheard the statement, the remark was not addressed to her and she could not rely on it. There is no evidence she did. The word "youse" is dialect at best and means "you" which is both singular and plural. Webster's New International Dictionary (2d ed., unabridged). The most that can be said for Marvin's statement he meant any one of the three could drive is he did not care who drove. Both Marvin and Hubert did not expect June to drive and both intended Hubert to drive. It is possibly true Marvin would have given permission to June to drive or would not have objected to her driving, but what he might have done is not implied permission. Mere presumption that permission had been given or would be given if asked is not enough. *Bro v. Standard Accident Ins. Co.* (1927), 194 Wis. 293, 215 N. W. 431.

Taking this evidence together in chronological order and giving it as much unity as possible, it does not reasonably spell out an inference of implied permission or constitute a basis from which an inference of permission to June could be reasonably drawn by a jury.

State Farm advances the proposition that June Roeder was covered by the Mutual Service policy regardless of permission to drive from Marvin. This argument proceeds on the theory that the terms "use" or "using" have a broader meaning than the term "operation" as used in the omnibus clause, and since the policy provides coverage for one using the automobile with permission of Marvin, June did not need consent to drive the car. Counsel relies on

*Schimke v. Mutual Automobile Ins. Co.* (1954), 266 Wis. 517, 64 N. W. (2d) 195, and *Maurer v. Fesing* (1940), 233 Wis. 565, 290 N. W. 191. Apparently the argument is that June, while behind the wheel, was not driving but using the car with Marvin's consent and, therefore, was an additional insured. Counsel has incorrectly analyzed *Fesing* and *Schimke*. These cases would be applicable if Hubert had allowed June to drive and he became a passenger while the car was being used for the purpose of going back to the celebration. These cases are not applicable to the facts here. *Behringer v. State Farm Mut. Automobile Ins. Co.* (1957), 275 Wis. 586, 82 N. W. (2d) 915, correctly pointed out the holding in the *Schimke* and *Fesing Cases*. The doctrine of initial permission, as applied in Wisconsin, has been analyzed and discussed in *Harper v. Hartford Accident & Indemnity Co.,* ante, p. 500, 111 N. W. (2d) 480.

Some of the other errors assigned by the appellant have merit, but it is not now necessary to discuss them because the amended judgment must be reversed and the jury answer to question 4 in the verdict changed from "Yes" to "No." This will result in a judgment for the plaintiff on the verdict as amended against June Roeder and her insurer State Farm and a dismissal of the complaint against Mutual Service.

*By the Court.*—Judgment reversed, and the cause remanded with directions to change the answer to question 4 in the verdict from "Yes" to "No" and to enter judgment on the verdict as changed in favor of the plaintiff against June Roeder and State Farm, and dismissing the complaint against Mutual Service.

FAIRCHILD, J., dissents.