KREBSBACH and another, Plaintiffs and Respondents, v. MILLER, Defendant: INTEGRITY MUTUAL INSURANCE COMPANY, Defendant and Appellant.

*November 29—December 20, 1963.*

172

For the appellant there was a brief by *Gibbs, Roper &
Fifield* of Milwaukee, and oral argument by *Richard S.
Gibbs.*

For the respondents there was a brief by *Morton Wax*
and *Phillip M. Wax,* attorneys, and *Ray T. McCann* and
*Leonard L. Loeb* of counsel, all of Milwaukee, and oral
argument by *Mr. Morton Wax* and *Mr. Loeb.*

CURRIE, J. The sole issue on this appeal is whether at the time of the accident the car was being operated with the permission of the named insured within the meaning of the omnibus coverage clause of the policy.

Integrity Mutual concedes that the record on the motion for summary judgment discloses that a disputed issue of fact exists with respect to whether the named insured, George A. Malliet, placed any restriction upon his son's use of the Ford automobile which he was permitted to take to Milwaukee. It contends, however, that, even if the named insured had turned the automobile over to his son without voicing any express prohibition against letting someone else use it, the use of the car by Alfred Miller was without the permission of the named insured, and thus there was no coverage with respect to plaintiffs' injuries. Therefore, for the purposes of this opinion we will assume that the named insured turned the car over to his son without imposing any express restriction as to its use.

A careful research of the authorities in the country generally bearing on the instant issue has caused us to approve the following statement appearing in 7 Am. Jur. (2d), Automobile Insurance, p. 431, sec. 116:

"It has frequently been stated that, as a general rule, the permission given by the named insured to another to use the named insured's car does not authorize the permittee to allow a third party to use the car, and that if the permittee does allow a second permittee to use the car, such use is not 'with the permission of the named insured' as those words are used in the omnibus clause. However, the effect of this strict rule has been greatly diluted by reason of the fact that. many of the courts recognizing the rule have substantially modified it by stating that in every case where the first permittee permits another to use the insured automobile, *a factual determination must be made whether the initial grant of permission was broad enough to include an implied grant*

*to the permittee of authority to give another use of the automobile and thus render the latter an additional insured under the omnibus clause."* (Italics supplied.) [1]

The statement by this court, "In the absence of express permission, the scope of the permission must be determined by the circumstances," in the recent case of *Harper v. Hartford Accident & Indemnity Co.* (1961), 14 Wis. (2d) 500, 509, 111 N. W. (2d) 480, is in accord with the italicized portion of the above quotation from 7 Am. Jur. (2d), *supra.* Before examining the situations in which the named insured will be deemed to have given implied permission to a third person to operate the insured vehicle, we must ever keep in mind that this court is committed to a broad, rather than narrow, construction of the word "permission" as it appears in the policy omnibus coverage clause required by sec. 204.30 (3), Stats. *Pavelski v. Roginski* (1957), 1 Wis. (2d) 345, 84 N. W. (2d) 84.

One of the situations in which the named insured is held to have given implied permission to a third person to drive is when the first permittee, to whom the car was intrusted by the named insured without any express prohibition against letting another drive, retains possession of the car but turns over its operation to another while such first permittee remains an occupant of the car.[2] *Standard Accident Ins. Co. v. New Amsterdam Casualty Co.* (7th Cir. 1957), 249 Fed. (2d) 847; *Butterfield v. Western Casualty & Surety Co.* (1960), 83 Idaho 79, 357 Pac. (2d) 944; *Fireman's Fund Indemnity Co. v. Freeport Ins. Co.* (1961), 30 Ill.

[1] See also Annos. 160 A. L. R. 1195, and 5 A. L. R. (2d) 600, 643; 45 C. J. S., Insurance, p. 892 *et seq.,* sec. 829c; 7 Appleman, Insurance Law and Practice, p. 300 *et seq.,* secs. 4365–4367.

[2] This assumes that there has been no material deviation in the initial use for which permission was granted to the first permittee. Situations where there is a deviation in use, unless the same arises by reason of the first permittee's allowing another to drive or use the insured vehicle, are without the scope of the instant opinion.

App. (2d) 69, 173 N. E. (2d) 543; *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co.* (1959), 30 N. J. 262, 152 Atl. (2d) 589. *Mauer v. Fesing* (1940), 233 Wis. 565, 290 N. W. 191, held that in such situation the named insured has consented to such use because the initial permission to use the car was not restricted to actual operation by the first permittee. See also *Schimke v. Mutual Automobile Ins. Co.* (1954), 266 Wis. 517, 64 N. W. (2d) 195, although the result in that case expressly was not grounded on the omnibus coverage statute (sec. 204.30). Even where the first permittee is not a passenger, an inference of permission may arise where the third person is engaged on some errand or activity for the benefit, advantage, or purposes of the first permittee. *Harrison v. Carroll* (4th Cir. 1943), 139 Fed. (2d) 427, and *Aetna Life Ins. Co. v. Chandler* (1937), 89 N. H. 95, 193 Atl. 233.

Another fact situation which may support a finding of implied permission is where the named insured has knowledge that the first permittee is loaning the use of the insured vehicle to others and nevertheless remains silent. *Shoup v. Clemans* (Ohio App. 1939), 31 N. E. (2d) 103, and *Odden v. Union Indemnity Co.* (1930), 156 Wash. 10, 286 Pac. 59, 72 A. L. R. 1363.

Also, where for all practical purposes the first permittee is the real owner of the car but title has been taken in the name of the named insured for reasons of convenience, the general control and custody of the first permittee is such that, when he grants permission to a third person to operate the insured vehicle, such operation is held to be with the implied permission of the named insured. *Indiana Lumbermen's Mut. Ins. Co. v. Janes* (5th Cir. 1956), 230 Fed. (2d) 500; and *Hinchey v. National Surety Co.* (1955), 99 N. H. 373, 111 Atl. (2d) 827. Cf. *Schimke v. Mutual Automobile Ins. Co., supra.*

In the instant case the named insured turned possession of the insured car over to his son to take it 130 miles distant and there use it for a period extending over several months. The majority of this court conclude that under such circumstances, absent an express prohibition against permitting others to drive the car, such circumstances will require a finding that the named insured gave defendant Alfred Miller implied permission to operate the car at the time and place of the instant accident. The only reasonable inference to be drawn from such circumstances is that the son was to exercise the same control over the use made of the car that an owner would. The New Jersey court recently declared in *Baesler v. Globe Indemnity Co.* (1960), 33 N. J. 148, 152, 162 Atl. (2d) 854:

"Thus, it is almost universally held in the modern cases that where the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus to render him an additional insured. [Citing cases.] The first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee."

We also deem apposite the statement made by the Fifth circuit court of appeals in *Indiana Lumbermen's Mut. Ins. Co. v. Janes, supra* (230 Fed. (2d) at page 503):

"Of course, in this automobile age, a common thing for an automobile owner is to loan the car to friends, business associates, acquaintances, and others for personal use of the permittee wholly unrelated to the business or interest of the vehicle owner."

Two cases which strongly support the conclusion reached, that the permission granted by the senior Malliet to the son, Darrel, included the right of Darrel to loan the temporary use of the car to defendant Miller, are *Utica Mut. Ins. Co. v. Rollason* (4th Cir. 1957), 246 Fed. (2d) 105, and *Standard*

*Accident Ins. Co. v. Allstate Ins. Co.* (1962), 72 N. J. Super. 402, 178 Atl. (2d) 358.

In the *Utica Case* the named insured was a motor service company which had turned over use of the insured car to Davis, its service manager. One evening Davis allowed his two sons to use the car to visit some friends and have an evening on the town. During the course of the evening the sons met some friends who attended a college 30 miles away. At the end of the evening the sons drove their friends back to the college, during which an accident occurred. At the time one of the sons was driving. The jury returned a verdict finding that Davis was given the car for his general use and that he had implied permission from the named insured to allow his sons to use the car. Upon this verdict judgment was rendered in the district court against the insurer, and the court of appeals affirmed. Judge SOBELOFF in his opinion for the court stated (246 Fed. (2d) at page 110) :

"If an insured automobile is left by the owner with someone for general use and he in turn permits its use by another, the use is deemed to be with the permission of the owner."

The facts in the *Standard Accident Case* closely parallel those of the instant case. There a father, who had purchased a new car, turned the keys of an older car over to his nineteen-year-old son to use, the son having just returned from service in the Marines. The son used the car approximately five months in going to and from work and for social purposes. He also bought the gas and oil and made necessary minor repairs. The son loaned the car one weekend to a friend, Baker, for his own personal use. The accident occurred while Baker was operating the car. The court held that the omnibus coverage clause of the policy applied and stated (72 N. J. Super. p. 408, 178 Atl. (2d) p. 361) :

"Our review of the proofs leads us to conclude that the younger Aslaksen was given so broad an initial grant of authority over the Pontiac upon his return from Parris Is-

land, which grant continued undisturbed for five months, that he had an implied grant of authority to let Baker use the automobile on the weekend of the accident. The son used the car as his own and paid for substantially all the expenses involved in its maintenance. He operated it daily and was not required to account to his father for its use."

By way of comparison there may also be situations where the permission granted by the named insured to the first permittee is for such a limited purpose that it would be unreasonable to imply any authorization to such first permittee to turn possession of the automobile over to another to be used for a purpose different from that than for which the initial permission was granted. See *Harper v. Hartford Accident & Indemnity Co., supra,* and *Hays v. Country Mut. Ins. Co.* (1963), 28 Ill. (2d) 601, 192 N. E. (2d) 855. We find it unnecessary and also inadvisable to attempt to lay down any general rule which would establish the dividing line between cases of that kind and the fact situation presented by the instant case.

*Harper v. Hartford Accident & Indemnity Co., supra,* could well have been decided on the narrow ground that a limitation on use by one other than the first permittee could be implied from the circumstances of the case. The decision, however, was grounded on a broader principle. In particular, the court stated (14 Wis. (2d) at page 509) :

"In the absence of express permission, the scope of the permission must be determined by the circumstances. . . . in Wisconsin, the implied authority to delegate permission to the use of the car by another is restricted to the same use for which the initial permission was given . . ."

In the light of the basis upon which the instant opinion is grounded the above-quoted language is overly restrictive. This is so even though the quoted statement may be interpreted as only applying to a situation where the initial use was special as distinguished from a general use. Neverthe-

less, there may be situations in which the initial permission to the first permittee was for a special use, and yet the surrounding circumstances are such that his turning of use over to another for a different use would not necessarily preclude a finding that it was within the scope of the initial permission. As demonstrated by some of the cases cited herein, the initial permission may be so broad as to authorize the first permittee to loan the insured vehicle to another for any use that an owner would be likely to loan his car.

We also deem it advisable to point out that the instant case does not involve that provision of the omnibus coverage clause which limits those who, in addition to the named insured, are authorized to grant permission to another to use or operate the insured vehicle. These additional persons are restricted to "an adult member of such assured's household other than a chauffeur or domestic servant." Here, the permission to Miller is traceable to the named insured and it is immaterial that the first permittee was a minor.

*By the Court.*—The order appealed from is affirmed.

HALLOWS, J. (*concurring*). I concur in the affirmance of the order of the circuit court but disagree with the reasons given by the majority for the affirmance.

In a summary-judgment case, this court is not to decide the facts or to draw inferences therefrom except such as can be done as a matter of law. *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9. The trial court denied the motion for summary judgment on the ground there was a question of fact to be determined.

The majority of the court concludes that in the absence of an express prohibition against permitting others to drive the automobile the fact that the named assured, the father, turned over the possession of the car to his son to take it 130 miles distance and there to use it for a period of several months will require a finding of fact that the father gave the second

permittee implied permission to operate the car for the second person's personal use within the meaning of sec. 204.30 (3), Stats. This on the ground the only reasonable inference to be drawn from the circumstances is that the son was to exercise the same control over the use made of the car that the owner would. Aside from the conflict over the issue of allowing others to drive the automobile this court is not warranted on the paucity of facts presented on the motion in drawing such an inference. If the majority means the facts will require such an inference by the jury as a matter of law and the majority has not drawn such an inference, then the case should go back to the trial court on the ground there exists a question of fact as herein contended. There are no circumstances or facts indicating the named assured had any reason to believe or know anyone else by permission of his son would drive the car, much less for a purpose unconnected with the son's use or purpose. The majority view is the equivalent of saying the scope of the use granted to the son was so unlimited, broad, and unfettered that he was put in the shoes of the named assured and therefore was authorized to reloan the use and operation of the automobile to anyone for any purpose.

The omnibus coverage clause, sec. 204.30 (3), Stats., provides, "The insurance hereby afforded shall not apply unless the riding, use or operation above referred to be with the permission of the assured named in this policy, . . ." Since this language is positive when the extended insurance coverage is not to apply, the determination of "permission" as an exception requires some affirmative fact indicating such permission. The absence of an express prohibition is not controlling or probative. If the majority views the problem of construction from the standpoint that permission to use an automobile impliedly authorizes any use or operation of the car unless there is affirmative proof of either an express or implied limitation upon the use, purpose, area, driv-

ing, or in any other respect, then it is against the great majority of the decided cases in other states and those decided by this court. Even a liberal construction of the statute for the purpose of affording coverage to injured members of the public does not justify the assumption the permission is unlimited unless expressly or impliedly limited in some manner. *Locke v. General Accident Fire & Life Assur. Corp.* (1938), 227 Wis. 489, 279 N. W. 55; *Dahlke v. Roeder* (1961), 14 Wis. (2d) 582, 111 N. W. (2d) 487. Since a factual determination must be made of the scope of the initial grant of permission, I would affirm.

I agree with the proposition of law that an owner of an automobile who grants permission to another on such terms or under such circumstances as amounts to an unlimited or an unrestricted use, the equivalent of the authority of the owner over the use of the car, impliedly consents that the initial permittee may allow others to drive or to use the car for their private purposes. An owner could do as much. Such cases are not general or usual but the exception in present-day experience. The so-called implied permission of the named assured in such rare cases for any use or purpose flows from the nature of the original permission. Anything less than such unlimited or such general use raises a question in each case whether the limited authorization or permission regardless of degree of limitation has been violated. The majority rule is that the initial permission does not by implication include authority beyond the scope of the original permission. See Anno. Omnibus clause of automobile liability policy as covering accident caused by third person who is using car with consent of permittee of named insured. 160 A. L. R. 1195; 2 A. L. R. Blue Book, Supp. Dec. 1946–1952, p. 738; 3 A. L. R. Blue Book, Supp. Dec. 1952–1958, p. 668; 1963 A. L. R. Blue Book, Supp. Dec. p. 508; 7 Appleman, Insurance Law and Practice, p. 282, sec. 4361. The cases on the initial permission rule in Wisconsin were

discussed and analyzed in *Harper v. Hartford Accident & Indemnity Co.* (1961), 14 Wis. (2d) 500, 111 N. W. (2d) 480.

The defendant insurance company's position on this appeal is that the permission granted the son to use the car was for his own personal use and did not include a right in the son to permit a third person to use the car for the third person's use or purpose. The authorization, while broad in scope, still had its limitations for personal use and since the use made at the time of the accident was not within the scope of the permission, there was no coverage. If it is permitted to indulge in an inference, as the majority has, then I would infer from the few facts presented (and I believe a jury could reasonably draw the inference) that authority or permission granted the son was limited and did not clothe him with the attributes of an owner. Therefore, the use by Miller with permission of the son was beyond the scope of the original permission and cannot be assigned to the father under any theory of implied permission.